469 P.2d 720

STATE of New Mexico, Plaintiff-Appellee,

v.

Ernest B. TURNER, Defendant-Appellant.

No. 413.

Court of Appeals of New Mexico.

April 17, 1970.

William H. Carpenter, Scott McCarty, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Justin Reid, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

WOOD, Judge.

Convicted of aggravated burglary and rape of Peggy Ann Bowen, defendant appeals. Sections 40A–16–4, and 40A–9–2, N.M.S.A. 1953 (Repl. Vol. 6). The issues concern: (1) demand for exculpatory information; (2) lack of hearing concerning out-of-court identification; (3) reference to collateral offenses during cross-examination, in rebuttal testimony and in closing argument; (4) sufficiency of the evidence; and (5) comment on defendant's failure to testify.

*Demand for exculpatory information.*

Defendant demanded that the State produce, for his inspection and copying, any material which might tend to exculpate him. This tactic concerns a possible suppression of evidence; that is evidence known to the police or district attorney, unknown to and kept from defendant. Trimble v. State, 75 N.M. 183, 402 P.2d 162 (1965). " * * * [S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See Trimble v. State, supra; State v. Vigil, 79 N.M. 80, 439 P.2d 729 (Ct.App.1968). Compare Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967).

The State's response to the demand was " * * * that the file of the District Attorney has been available and open to counsel for defendant throughout their preparation * * *." Defendant does not claim otherwise. Specifically, defendant does not assert that evidence has been suppressed. Defendant's position is that he has no way of knowing whether evidence has been suppressed. On the basis of this lack of

knowledge, he asked the trial court to inspect "* * * all information in possession of the State for exculpatory material not made available to the defense and to seal it and file it at the close of the case for later review in appellate court * * *." Because the trial court did not examine the prosecutor's file and did not cause that file to be made part of the court record, defendant asserts the trial court erred.

The issue is a limited one. Here, defendant has not made a demand for inspection of specific documents as in Mascarenas v. State, 80 N.M. 537, 458 P.2d 789 (1969). Defendant, having demanded that the prosecution produce evidence favorable to him, does not assert that his demand has not been met. The issue is whether the trial court erred in refusing to accede to defendant's request that the court inquire into the truth of the State's response to defendant's demand.

Defendant relies on Hensley v. United States, 406 F.2d 481 (10th Cir. 1968). That case dealt with the time when the judge inspected government records to determine whether they contained exculpatory material to which the defendant should be given access. The opinion assumes that the trial court must make such an inspection if requested. That, however, is the point in issue. Hensley v. United States, supra, is not applicable.

The issue involves discovery in criminal proceedings. Under certain federal statutes and rules of criminal procedure, a federal defendant is accorded a right of discovery. Thus, the trial judge examines the prosecution's file to determine whether it contains material for which discovery is authorized or whether the failure to disclose such material has prejudiced the defendant. Government of Virgin Islands v. Lovell, 410 F.2d 307 (3rd Cir. 1969); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968); cert. denied, 395 U.S. 958, 89 S.Ct. 2108, 23 L.Ed.2d 744 (1969); Meyer v. United States, 396 F.2d 279 (8th Cir. 1968); cert. denied, 393 U.S. 1017, 89 S.Ct. 621, 21 L.Ed.2d 561 (1969).

■ We know of no right to discovery by a defendant in criminal proceedings under New Mexico statutes or rules. Discovery is accorded where to deny it deprives a defendant of a constitutional right, see Mascarenas v. State, supra, and where a particularized need has been demonstrated, State v. Tackett, 78 N.M. 450, 432 P.2d 415, 20 A.L.R.3d 1 (1967); cert. denied, 390 U.S. 1026, 88 S.Ct. 1414, 20 L.Ed.2d 283 (1968). Here, however, there is neither showing, nor claim, of a deprivation of a constitutional right or of a particularized need.

■ Defendant's claim simply is that he doesn't know whether the State has complied with his demand for exculpatory material; that because he doesn't know, the trial court should check on the truth of the State's response. In essence, defendant wants the court to go on a "fishing" expedition. Defendant is not entitled to such an expedition. State v. Tackett, supra. Since defendant was not entitled to go on a fishing expedition himself, the trial court did not err in refusing to undertake such an expedition on defendant's behalf, absent some showing, or indication, that a right of defendant has been or would be violated. United States v. Mitchell, 408 F.2d 996 (4th Cir. 1969); cert. denied, 396 U.S. 930, 90 S.Ct. 268, 24 L.Ed.2d 228 (1969). There being no such showing or indication, the point is without merit.

*Lack of hearing concerning out-of-court identification.*

Defendant contends the victim's in-court identification of defendant was tainted by illegal out-of-court identification. He claims that he raised this issue to the trial court and that the trial court erred in failing to conduct an evidentiary hearing on the legality of the out-of-court identification of defendant. Generally, on the question of "illegal taint" see State v. Morales, 81 N.M. 333, 466 P.2d 899 (Ct.App.) decided March 6, 1970; State v. Clark, 80 N.M. 91, 451 P.2d 995 (Ct.App.1969), rev'd. on other grounds, 80 N.M. 340, 455 P.2d 844 (1969);

**574**

State v. Carrothers, 79 N.M. 347, 443 P.2d 517 (Ct.App.1968).

■ Where there is an issue as to an "illegal taint," the issue is to be resolved by a consideration of the totality of the circumstances surrounding the out-of-court identification. This requires an evidentiary hearing. See State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App.), decided January 30, 1970.

Was there such an issue in this case so that an evidentiary hearing was required?

■ A pre-trial motion asked the court to suppress any testimony or reference to an identification of defendant if the identification was made after the victim had been shown a series of photographs. Compare State v. Carrothers, supra. This motion was pending immediately prior to trial. The trial court suggested that the jury be selected before hearing the motion. All counsel agreed. With this agreement from counsel, there was no error in failing to dispose of the motion, either with or without an evidentiary hearing, prior to selecting the jury.

After the jury was selected, and out of its presence, defendant stated that he wished to present evidence on the motion to suppress. He then represented to the court " * * * the facts * * * we would show * * *." The State then responded with its version of facts. The court stated that it accepted the " * * * statement as what your witness will say and I will deny your motion. * * *" The objection to identification testimony during the trial was "on the grounds previously stated." Thus, the grounds for the claim of "illegal taint" are those contained in the pre-trial motion and those presented to the court after the jury was selected. We must determine if those grounds raise an issue as to "illegal taint" since no evidentiary hearing was held.

■ The pre-trial motion refers to identification made after the victim was shown a series of photographs. There was testimony at the trial that defendant's picture was one of the photographs shown to the victim. If the defendant is claiming that the victim identified him from the photographs, and such an identification was illegal, there is no basis for the claim. Nothing in the pre-trial motion, the grounds presented to the court after the jury was selected, or the trial testimony indicates any identification made on the basis of the photographs. There is no basis for a claim of illegal identification if there was no identification. No "illegal taint" issue was presented in connection with the photographs.

■ Defendant's claim to the trial court, after the jury was selected, was based on an asserted line-up. Defendant's representations to the court were: That a witness [apparently the victim] had made a tentative identification of defendant, but indicated she could not be certain of the identification without a line-up. Preparations were under way for a line-up. " * * * That then the investigating officer inadvertently permitted a confrontation between the witness who was there to view a line up including Mr. Turner, but a confrontation was permitted that was not a line up and that the identification that arose out of that is a bad identification, an illegal one. * * * *"

The State's response does not materially differ from defendant's representations. The parties agree that while preparations were underway for a line-up, there was a confrontation between defendant and the victim; that the victim identified defendant as the perpetrator of the crime immediately after this confrontation. Both parties agree that the confrontation was inadvertent. Defendant walked into the office where the victim was waiting for the line-up preparations to be completed. We add that the trial testimony fully supports these representations—that the confrontation was inadvertent.

Defendant's claim then is that he was entitled to an evidentiary hearing to determine

whether the victim's in-court identification of defendant was tainted by the identification made after the inadvertent confrontation.

The claim is without merit. On the basis of defendant's own representations to the court, "* * * no claim can be made of the presence of [or] the influence of any improper suggestion exerted by the police. * * *" People v. James, 269 Cal.App. 2d 360, 74 Cal.Rptr. 856 (1969). Compare State v. Torres, supra. Defendant's claim of an inadvertent confrontation negates any design or arrangement by the police to suggest an identification. Simon v. State, 7 Md.App. 446, 256 A.2d 348 (1969). The confrontation resulting in the out-of-court identification, according to defendant's own representations, was an accident. See People v. James, supra. The accidental meeting was not a procedure conducted by the police. Further, the accidental meeting neither suggested an identification nor was it conducive to an irreparable mistaken identification. State v. Torres, supra.

Defendant's representations did not raise an issue as to an illegal out-of-court identification. There being no issue as to an illegal identification, nothing was presented to the court raising an issue as to "illegal taint." Thus, no evidentiary hearing was required.

*Collateral offenses—reference to in cross-examination.*

■ Defendant, without objection by the State, see State v. Chavez, 80 N.M. 786, 461 P.2d 919 (Ct.App.1969), presented the testimony of experts who had administered certain deception tests—polygraph, hypnosis and sodium amytol. Each of the experts, without objection, gave their opinion as to the results of the tests, as interpreted by them. The psychologist who administered the hypnosis test and the psychiatrist who administered the sodium amytol test gave their opinion that defendant was telling the truth when he denied the aggravated burglary and rape of Peggy Ann Bowen.

The issue here concerns the State's cross-examination of the psychologist and psychiatrist. The State asked these two experts about information utilized by them in reaching their opinions. Specifically, they were asked if they had been furnished information that defendant had committed an assault upon Francine Skidmore and a burglary of her apartment, an assault upon Barbara Ross, a burglary and rape of Carolyn Corgan, and that a fingerprint taken from Miss Corgan's apartment had been identified as defendant's fingerprint. They were also asked how they evaluated this information.

Defendant asserts the trial court erred in permitting this cross-examination. We considered and rejected a similar contention in affirming defendant's conviction on the Skidmore charge. State v. Turner, 81 N.M. 450, 468 P.2d 421 (Ct.App.), decided February 13, 1970. That opinion states:

"The jury, in determining the weight to be given the expert opinions, was entitled to know the facts upon which the opinions were based, including all facts of a pertinent nature which were before the experts and which they could have considered in arriving at their conclusions.

"In testing the expert opinion, the cross-examiner may ascertain whether all facts presented to the expert, although of a collateral nature, were considered by him. (Citations omitted).

"In our opinion, the procedure followed in securing expert testimony as to the truthfulness of defendant's denials opened the door to the question relating to the collateral crimes."

Defendant points out that in State v. Turner, supra, part of the procedure followed (which we held to have opened the door to the question) was a stipulation as to the admissibility of the test results and the right to cross-examine concerning the tests, the techniques employed and limitations upon those techniques. Defendant

asserts no such stipulation is involved in this case.

The contention is factually erroneous. The stipulation, part of which is quoted in State v. Turner, supra, pertained to four cases, one of which was Bernalillo County criminal cause 18989. This case, in the District Court, was cause 18989. The stipulation pertained to this case. It is true that the stipulation has not been included in the transcript in this appeal. It is, however, included in the transcript filed in this court in State v. Turner, supra. We take judicial notice of the records on file in this court. See Miller v. Smith, 59 N.M. 235, 282 P.2d 715 (1955); compare Ex Parte Lott, 77 N.M. 612, 426 P.2d 588 (1967).

*Collateral offenses—rebuttal testimony concerning:*

■ The psychologist and psychiatrist gave their opinions that defendant told the truth when he denied the crime for which he was being tried, and when he denied that he had been at the Corgan apartment on the night of her rape. Both experts were cross-examined as to their evaluation of the asserted fact that defendant's fingerprint had been found in the Corgan apartment. The psychologist testified that if it was proven that defendant's fingerprint had been found in the Corgan apartment, then the fingerprint evidence should be considered equally with the psychologist's opinion or "perhaps greater." The psychiatrist was asked if doubt would be cast on his opinion if it was proven that defendant's fingerprint had been found in the Corgan apartment. The psychiatrist said it would depend on how positive, good, or clear the proof was as to the fingerprint.

On rebuttal, the State introduced evidence that a fingerprint on the inside of a window in the Corgan apartment was made by defendant. The State offered this evidence as going to the weight to be given the opinions of the psychologist and psychiatrist. Defendant claims this rebuttal evidence was not proper impeachment evidence. The evidence attacked the credibility of the experts' opinions and was admissible in the light of their answers on cross-examination. Landers v. Atchison, Topeka & Santa Fe Railway Co., 68 N.M. 130, 359 P.2d 522 (1961); see State v. Buchanan, 76 N.M. 141, 412 P.2d 565 (1966); III Wigmore, Evidence § 992 (3rd ed. 1940); compare Borrego v. Territory, 8 N.M. 446, 46 P. 349 (1896), aff'd in part and reversed in part, 164 U.S. 612, 17 S.Ct. 182, 41 L.Ed. 572 (1896); State v. Lunn, 80 N.M. 383, 456 P.2d 216 (Ct.App.1969).

Defendant claims the fingerprint evidence was inadmissible because evidence of an unrelated crime. We agree that this evidence was evidence concerning an unrelated crime. Unless this evidence was competent evidence, it could not be properly admitted on rebuttal for impeachment purposes. State v. Turnbow, 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960).

■ Evidence of other crimes is admissible if it serves to establish the identity of the person charged. State v. Turner, supra, and cases therein cited. The fingerprint testimony was admissible on the issue of identity; it tended to establish that identity by characteristic conduct. State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App. 1969). Being competent evidence on the issue of identity, its use for impeachment purposes was not error.

*Collateral offenses—referred to in closing argument.*

■ During closing argument the prosecutor referred to the collateral offenses mentioned in the cross-examination of defendant's experts and the rebuttal testimony concerning the fingerprint. Defendant asserts this argument was improper (and his objections to this argument should have been sustained) because it went outside the record. Marks v. United States, 260 F.2d 377 (10th Cir. 1958); cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959); see State v. Santillanes, 81 N.M. 185, 464 P.2d 915 (Ct.App.) decided January 2, 1970. Defendant claims there was

no evidence of these collateral offenses since they came into the case only through questions by the prosecutor and the fingerprint evidence offered solely for impeachment purposes.

We agree that all references concerning the collateral offenses came into the case through cross-examination questions or impeachment testimony. We do not agree that the prosecutor's arguments went outside the record. All the remarks were made in reference to the credibility of defendant's experts; the prosecutor was emphasizing to the jury that information given to the experts about other crimes made no difference in their opinions that defendant told the truth in his denials. In making these remarks, the prosecutor did flatly assert that defendant had been convicted of the Skidmore charge. However, the psychiatrist had testified that he was aware of that conviction.

Defendant also asserts that reference to collateral offenses in the closing argument should not have been permitted because it confused the jury as to the true issues in the case. The trial court has wide discretion in dealing with counsel's argument. State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969). The issue is whether the trial court abused its discretion in overruling defendant's objections to the prosecutor's remarks. See State v. Hargrove, 81 N.M. 145, 464 P.2d 564 (Ct.App.) decided January 9, 1970.

The jury was instructed on three occasions—during the cross-examination of the psychologist, the cross-examination of the psychiatrist and upon final submission of the case to them—that references to the collateral offenses and to the fingerprint went only to the credibility of the experts and were not to be considered on the question of guilt. The jury was also instructed, in language similar to New Mexico U.J.I. 17.7, that arguments of counsel were not evidence, and they were not to depend upon counsel's statements for the evidence, but upon their own memories.

Considering that the references to the collateral offenses were opened up by the way defendant chose to defend against the charges, and the trial court's instructions referred to above, there was no abuse of discretion in allowing the prosecutor's argument.

*Sufficiency of the evidence.*

Defendant's claim is based on State v. Armijo, 25 N.M. 666, 187 P. 553 (1920). The syllabus by our Supreme Court reads:

"In this jurisdiction no corrobation of a prosecutrix for rape, by way of testimony of an independent character emanating from an outside source, is required in order to sustain a conviction. But the bald charge of a woman against a man in this regard, unsupported and uncorroborated by facts and circumstances pointing to the guilt of the accused, is insufficient to meet the requirement of the law that a verdict must be supported by substantial evidence."

Defendant asserts that all we have here is the victim's testimony; that there are no supporting facts and circumstances and therefore the victim's evidence is not substantial evidence.

We disagree.

There is evidence of Miss Bowen's complaint to the police as soon as the intruder left the apartment and the medical examination on the night of the crime showing recent intercourse. The victim testified the intruder held a knife to her head; one was found in the bedroom. There is evidence that the intruder gained entry by cutting screens and opening windows. The intruder was in the victim's room some 10 to 15 minutes before the rape; the victim could see the rapist's face by the light from a bathroom; she identified the defendant as the person committing the crimes. These are supporting facts and circumstances. The victim's testimony was substantial.

*Comment on defendant's failure to testify.*

■ Defendant contends the prosecutor commented to the jury on defendant's failure to testify. The testimony, and the context of the comment, shows this claim is without merit.

The victim testified the intruder had " * * * a certain ironic humor in his voice," [had] no distinguishing dialect, " * * * never used bad or crude English," and spoke like a relatively educated person.

The defense experts testified that defendant had a "full scale" I.Q. of 76 with a verbal I.Q. of 85, that he was just above the line of mental retardation, was a low learner, and did not have the intelligence expected of a high school graduate.

In replying to defendant's closing argument, the prosecutor stated:

. "Now, they seem to have made some inference here that this person that committed this rape was well spoken and had no sign of a dialect or anything. Now who else have we heard testify to the contrary? No one. They say, well, he's not very intelligent according to the psychiatrist. That doesn't have anything to do with whether or not he was well spoken. Isn't that precisely what Doctor Caplan testified to? Didn't he say his verbal ability far exceeded his physical ability, isn't that where he scored high in his I. Q.? How can we make such a comparison with the evidence that has been presented to you based upon that. * * *"

The testimony of five of the defense witnesses, including the three experts, shows they had talked with the defendant. None of them described his manner of speaking.

The prosecutor's remark was a fair comment on the evidence. In the light of the evidence, the defendant is urging a strained construction of the above quotation when he asserts the quotation is a comment on defendant's failure to testify. State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct. App.1969).

The judgment and sentences are affirmed.

It is so ordered.

SPIESS, C. J., and OMAN, J., concur.